May it please the Court, Counsel, Nell Brown, Assistant Federal Public Defender for the Appellant, Mr. Eric Harris. I will attempt to reserve five minutes for rebuttal. Three critical points evident in the State Court record in this case demonstrate that Mr. Harris received a sentence for racketeering, a 15-year sentence that was essentially a sentence for actual murder under Oregon's guideline system that was an arbitrary deprivation of his liberty in violation of the Fourteenth Amendment's guarantee of due process. And this case implicates three core due process concerns. The first relates to notice, and that is evident in the various indictments in this case. The second core due process concern involves the burden of proof under Winship, and that comes into play at the pretrial motion stage in this case. And the third core due process concern is that the tail that was the sentence in this case wagged the dog of the substantive offense of conviction, and that comes into play in the opinion-setting grid block, which is at ER 257 and 258. I'd like to go through those three stages of the case that I think implicate those core due process concerns. First, the indictment. Mr. Harris was indicted on two racketeering counts based on allegations that he had participated in street gangs in Portland. The first racketeering count related to a gang called the Loped Out Pirus. I'm going to call them Enterprise A so I can avoid referring to that gang name repetitively. And the second racketeering count alleged participation in another gang called the Loped Out Pirus, which I'm going to refer to as Enterprise B. It's important to note about the indictment that both allegations relating to these two gangs allege that Mr. Harris had participated in the gangs through the exact same pattern of racketeering acts, and that is five different drug and weapons offenses. It was the state's position, it's also important to note, that Enterprise B was essentially a conglomerate gang and that it included Enterprise A. And finally, it's also important to note, and this is in the record at ER 241 to 249, which is the re-indictment describing the count regarding Enterprise B, it's important to note that Enterprise B involved much more serious conduct than did Enterprise A. It involved attempted murders, it involved witness intimidation. The second critical stage implicating due process concerns in this case is the pretrial motion stage. The defense filed a pretrial motion in this case to force the state to elect whether it intended to prove up Enterprise B or Enterprise A. And the state based that motion on the grounds that it needed notice of which enterprise it was to defend against, and that the two enterprises were mutually exclusive. The trial court agreed and they ordered the state to elect whether to prove Enterprise A or Enterprise B. The state, essentially electing not to bite off more than it could chew in this case, elected to enterprise A. And trial proceeded on that ground. There's a trial indictment, a revised version of the indictment at ER 250 to 253, and that essentially circumscribes the notice that Mr. Harris had of what he would be tried and on the hook for at sentencing. Third, the key stage in this case is the sentencing stage. The trial judge issued an opinion called the Opinion Setting Grid block relates to the Oregon Guidelines System. And this is where we see the tail of the sentence wagging the dog of conviction. Instead of requiring the state to live with its choice, its choice to prove up Enterprise A, the trial judge sentenced Mr. Harris for the conduct that had been alleged as part of Enterprise B. And at this stage, the state was essentially permitted to use its choice at the pretrial motion stage to evade its burden under Winship and to get the sentencing Mr. Harris for Enterprise B, even though it had specifically elected not to meet the standard of proof with respect to that enterprise. It's important in this case to look at the Opinion Setting Grid block. That's at ER 257 and 258. In that decision, the sentencing judge explained that the evidence in this case related to the racketeering organization, that's essentially Enterprise B. The next thing the judge says is that the conduct of that organization went as far as attempted murders and intimidation of witnesses. Again, I refer the court to pages 241 to 246 of the ER describing Enterprise B, the count that the state elected not to pursue. And that's where you see the attempted murders and witness intimidation. Finally, the court says that each defendant, this is a quote, each defendant was convicted of benefiting from this violent lawlessness in the conduct of his own criminal activities. That's not accurate because the defendant was convicted of essentially benefiting from the lawlessness of Enterprise A, but not of Enterprise B. And then the court goes on to say that the effect of that conduct on society is at least as great as the commission of murder and sentences Mr. Harris for actual murder. The sentence that he received was a 15-year sentence. It was a sentence that he could have only received for actual murder. Had he been sentenced for attempted murder, Mr. Harris would have received a sentence of five years or less. That would have been a level nine on the Oregon Sentencing Guidelines grid. If he had been sentenced for his predicate crimes or for the witness intimidation mentioned in the Opinion Setting Grid block, Mr. Harris would have received a sentence of 15 to 18 months, not 15 years. And this, I submit to you, is the tail wagging the dog. And under these circumstances, these particular circumstances, and with this procedural history, the Opinion Setting Grid block is an unreasonable determination of the facts in light of the state court record. I would ask the court to focus on these three issues. Notice the maneuvering of the state in this case to evade Winship and the language that comes from McMillan, which is a 1986 Supreme Court case regarding the tail of the sentence wagging the dog of conviction. I just want to briefly explain that the method of review required by this situation, and that was set out by Judge Paez in his Purtle decision. And here the state courts of They were presented with this due process question, and they issued a reasoned decision, but not as to the due process question. Therefore, the strict AEDPA standard is relaxed. Review is not de novo. However, this court performs an independent review of the record and looks through the unreasoned appellate decisions to the state trial court decision, which is the only reasoned decision on this issue, and I submit that's the Opinion Setting Grid block, and ask whether that decision was objectively unreasonable. Could you address at some point in your argument, please, the issues relating to whether the federal due process claim was exhausted in the state courts? Sure. The district court found that one portion of the due process claim was not exhausted, and that was the portion relating to the enterprise itself, as opposed to the predicates. The district court found that that was not exhausted, but this court reviews that issue de novo, and I believe that it was properly exhausted. As a factual matter, the term loped out woodlawns, as referred to in the Opinion Setting Grid block, is shorthand for the more I think that is incredibly clear if the court looks at the portion of the re-indictment that describes Enterprise B. But more importantly, Mr. Harris raised this very issue, the issue I'm raising before you now, when he raised the Bates case, and he raised that in his direct appeal brief at page 42, and that's in the excerpt of record, approximately page 121 to 130. It's a argument regarding vicarious liability, and also in the petition for review to the Oregon Supreme Court, which is at ER 165 to 167. And what the Bates case says, that's a federal district court case from the Northern District of Illinois. It's a 1992 case where the court found a due process violation that hinged on a notice issue. In that case, the government had chosen to prosecute a gang in Chicago called the El Rukin Gang, and there were 38 members initially indicted in a very large indictment in that case on racketeering charges containing 175 different counts. And the government decided in that case that they would segregate out certain defendants. And they took six defendants, and those are the defendants in the Bates case, who had only drug offenses, nonviolent predicates, and they segregated them out and tried them on those nonviolent offenses. And at trial, there was some limited evidence of more violent acts of others in the broader gang. And at sentencing, the government sought to have these more violent acts considered with respect to these nonviolent defendants. And what the Bates court held is that that would offend due process on a notice theory to hold the defendants liable at sentencing for what had previously been alleged or, sorry, previously alleged racketeering conduct that had at one point been dismissed by the government because those defendants were tried only on the basis of their involvement in narcotics activity. And that court relied on a Supreme Court decision from 1972 called Bates case raises the exact same argument in core that I'm raising here. And for that reason, this is not a defaulted issue. This is an issue that was properly presented to both the Oregon Court of Appeals and the Oregon Supreme Court. They aptly raised certain cases in page 20 and 22 of her brief relating essentially to Williams' decision of the Supreme Court in 1949 to suggest that a broad array of evidence can come in at sentencing that may have not been able to come in at trial and that the sentencing proceeding isn't limited by the facts essential to the jury's verdict. And I think that on the notice problem, the state is specifically elected not to prove up Enterprise B. Enterprise B was basically a conglomerate gang that included Enterprise A. When the state elected to only prove up the smaller gang, it circumscribed the notice or withdrew, specifically withdrew notice to Mr. Harris that he would be on the hook later on for the conduct of Enterprise B. And to permit the conduct of Enterprise B to be the basis for sentencing in this case is to permit the court is to permit the state to evade its burden under Winship. The state essentially was playing a shell game here. The state could have chosen to prove up sentencing. It tries to get the benefit of what it specifically elected not to do, which is prove up Enterprise B. And I would suggest that that violates the Supreme Court precedent dating back to Mulaney versus Wilbur, where the court essentially said that states can't be permitted to try to circumvent the Winship requirement. I think I'll reserve the remainder of my time for rebuttal. Thank you very much. Okay. May it please the Court, Counsel, Yuli M. Yu for the respondent. I'd first like to address the issue of procedural bar. Counsel's first claim pertains to the purported lack of notice in the indictment with respect to facts that were used to support the sentence in this case. And as I explained in our brief, that issue was simply not articulated to the highest courts in Oregon, the Oregon Supreme Court, in the petition for review. Oregon has rules of procedure, appellate procedure, which require that every claim that's alleged has to be specifically asserted as a separate claim of error. And in this case, that simply was not done. Counsel? Go ahead. Did the government raise the affirmative defense of procedural bar in the district court? My recollection is that with respect to, and it's my recollection, and it could be wrong, but my recollection was that the response did, but I can't cite to exactly where. So if you didn't raise it, then the claim is not procedurally barred. Would you agree with that? If you fail to raise that as an affirmative defense, then the claim could be heard by us. I don't believe that, it's unclear to me, and I can't say for sure that the district court would have discretion to consider a claim that was not asserted by the respondent as procedurally barred. I simply. Well, it could not have been fairly presented. There could be an exhaustion problem, which is a little different than procedural bar. Isn't that right? Right. On exhaustion, why doesn't the Bates case citation of that exhaust the claim? I thought that we had some precedent saying that if a federal precedent was cited to the state court, that that was an adequate way of raising an issue. And I guess in response to that, what I would say is that I don't think that the Bates case specifically deals with the issue of including in the indictment facts which the state can later rely on in asking the court to impose sentence. I don't think that that particular issue was raised. What I will say, however, is that I will concede that these issues are somewhat intertwined. I mean, in Blakely, I believe there, I mean, really the holding discusses facts which are alleged in the indictment and then proven to a jury. But from a purely, from a perspective of fairness to the state, if the defendant does not raise this as an issue at trial, then it's our position that there was no issue at trial with respect to whether or not these facts or the failure to allege these facts in the indictment was an issue. The defendant could have received other notice from the state. There may be other facts that were at play. And that may be the reason why the defendant didn't file a demerit to the indictment or didn't raise this challenge at the state, at the trial and appellate levels. But moving beyond the issue of whether or not the claim was procedurally barred, the claim simply lacks merit. The simple fact of the matter is that there was no clearly established Supreme Court law at the time which said that facts which pertain to a defendant's sentencing had to be alleged in the indictment. And what I would refer the court to is Justice O'Connor's dissent in Blakely, I'm sorry, in Apprendi, in which she states, our court has long recognized that not every fact that bears on a defendant's punishment need be charged in an indictment submitted to a jury and proved by the government beyond a reasonable doubt. And later in that dissent, she also articulates that it is remarkable that the court cannot identify a single instance in the over 200 years since the ratification of the Bill of Rights that our court has applied as a constitutional requirement the rule it announces today. So at the time the defendant was sentenced and tried in 1994, 1995, there simply was no clearly established Supreme Court law that required the state to plead these facts in the indictment and prove them to a jury beyond a reasonable doubt. And I think that, quite frankly, is the dispositive argument on this issue. And it would hang her hat on the procedural default. I don't think it's really necessary to do that because I think that, like I said, there was simply no clearly established Supreme Court law at the time. And also, I don't believe that Apprendi and Blakely really support the petitioner's argument because Apprendi simply holds that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Well, here, we don't have a sentence that exceeded the statutory maximum. And in Blakely, the ruling pertained to statutory mandatory factors. And here, it was a discretionary sentence. So In re Winship doesn't provide this holding. Decades of Supreme Court case law does not support such a proposition that the petitioner advances. And even Apprendi and Blakely don't. So unless the Court has any further questions, I'll rest on my brief. Thank you. MS. BROWN. Thank you. I want to be clear that I'm not raising a claim under Blakely or Apprendi here. I believe that Winship, McMillan. Winship is a 1970 case. McMillan, a 1986 case. Notice cases dating back to the beginning of due process. But as the Bates case cited, the Fuentes case is a 1972 case. I think all of those clearly established principles, which are fundamental and core to due process, notice the burden of proof being on the state to prove each element of the crime beyond a reasonable doubt, and the McMillan language that the sentence, the tale that is the sentence in the case cannot wag the dog of conviction. Those are all clearly established law that date back long before Blakely and Apprendi, and that applied in this case when Mr. Harris was sentenced in 1995. As far as the question of whether the state vigorously defended against the demurrer here, the defense trial, the defense counsel filed a demurrer prior to trial. And it essentially, it's in the trial transcript at page 296 to 307. And in that argument, the state vigorously defended that Enterprise B in this case, the conglomerate gang, was just that, a conglomerate gang. And what the defense counsel argued was that they had to have notice of whether they were going to be tried for Enterprise A or Enterprise B because they couldn't in a single trial defend effectively against both of those charges. Had the state decided to charge Mr. Harris with Enterprise B, it could have done so in a separate refel trial. Likewise, had the state wanted to sentence, had Enterprise A involved in attempted murders and intimidation of witnesses, Mr. Harris would be on the hook for those attempted murders and intimidation of witnesses. But the fact is that the state chose not to prove up this bigger conglomerate enterprise and not, therefore, to prove up the attempted murders and intimidation of witnesses. And the state is stuck with that choice. And to suggest that the state didn't vigorously defend against that would be not borne out by the record in this case. As far as the procedural default issue, I think the Bates case squarely raises the issue that I'm seeking to put before the court now. And I'll leave it at that on that issue. Just give me one minute. I think that one of the core things here in this case is that the tail that was the sentence wagged the dog of the conviction. Mr. Harris was sentenced to 15 full years. That is a sentence that he could have only received had he actually committed a murder otherwise. And to say that the notice and the Winship problems in this case don't tie into that, I think would be, I would be remiss if I didn't tie the three together. And I'd ask the court to do a comparison between certain pages of the excerptive record. And I think these pages, which I've already cited to the court, really highlight these three core due process concerns and why the procedural history of this case in particular made it an egregious due process violation that rendered his sentence arbitrary. And those are excerptive record 241 to 249. That shows the conducts that were, the conduct and predicates, the attempted murders and the witness intimidation that were part of the dismissed count, enterprise B. And then compare that with the trial indictment, which is at 250 to 53. And you can see the far less serious conduct that the state attempted to prove. And then if you look then and get the opinion setting gridlock at 257 and 258, you see how the state tries to backdoor or play a shell game with these, these, the RICO charges. And you can see that Mr. Harris was only on notice as to enterprise A, and that the state then maneuvered to evade its burden under Winship, and that the sentence that he ended up with was the tail that wagged the dog of the substantive conviction. If the court doesn't have. You know, I have one sort of offbeat question. I don't mean just to take you off, trip you up or anything. But what was the timeliness issue on the filing of the appeal in this case? In this case, did he actually file this notice of appeal in a timely manner? I've never, I obviously wasn't this counsel of record down there, but I don't believe that there was any issue as to timeliness of appeal. Time allowed under rule four? Oh, of the federal case? Yeah. I mean, I just, I had some concern that there might be a problem with the timeliness. I guess not. The state didn't raise it, so. The state has not raised it. And. The state has not raised that issue. And I have, I was appointed after that stage of the case. Mr. Harris raised his appeal pro se. So there may be a mailbox rule applicable or some other equities that would apply there. Okay. Well, I have a light question. These gangs, you pronounced it, I think, loc'd out? Loc'd out. Now, is it definitely loc'd out, not locked out? It's definitely not locked out. It's loc'd out. It comes from the term loco, crazy in Spanish. Well, it shows what I know. But you can see why I avoided saying it over and over. Loc'd out. Okay, well, you've done, both of you've done an admirable job competing with the jackhammer outside of the construction. So we appreciate the argument. Thank you, Your Honor. Thank you. Okay. Harris v. Bartlett shall be submitted.
judges: Gould, Paez, Rawlinson